UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| ROBERT B.,[1]<br>        Plaintiff,<br>   v.<br>KILOLO KIJAKAZI, et al.,<br>        Defendants. | Case No. 23-cv-06198-RMI<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 10, 11 |

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision finding that Plaintiff was not disabled under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. § 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Dkts. 4, 5), and both parties have filed briefs (Dkts. 10, 11).[3] For the reasons stated below, Defendant's motion for summary judgment is DENIED, and the case is REMANDED to the ALJ for further proceedings consistent with this order.

## I.  Introduction

In late 2020, Plaintiff was noted to have swelling in both legs "consistent with edema,

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in eight attachments to Docket Entry #9. *See* Dkts. 9-1 through 9-8.

[3] Defendant's brief is styled as a "Cross Motion for Summary Judgment."

possible lymphedema[.]" AR at 405. At that point, the condition was not painful. *Id.* An ultrasound of Plaintiff's legs taken in January 2021 revealed that Plaintiff's deep veins were unremarkable, at least between Plaintiff's groin and knees. *Id.* at 490–92. Around this time, Plaintiff began to reduce his work hours due to difficulty with mobility and the physical demands of his job. *Id.* at 224. In March 2021, Plaintiff told care providers that his "swelling ha[d] improved slightly" with changes to his diet. AR at 391. However, he reported that serum was leaking from a point of friction on his foot. *Id.* Plaintiff left his job on April 1, 2021, stating that he could no longer work even with the accommodations provided by his employer. *Id.* at 224, 230.

In early May of 2021, Plaintiff complained that his ankles were swelling. AR at 390. Less than two weeks later, Plaintiff was admitted to the emergency room with shortness of breath, increased swelling in his legs, and a 20-pound weight gain since the beginning of the month. *Id.* at 350, 385. Plaintiff reported that his edema had gotten progressively worse over the prior two months, that his legs had gotten redder, and that he could no longer wear pants due to the swelling. *Id.* at 76, 353–54. Treatment providers observed that Plaintiff had pitting edema on his legs and abdomen. *Id.* at 708, 715. They also noted the presence of cellulitis and thickened skin. *Id.* at 714. Plaintiff was given intravenous antibiotics for an infection in his right leg. *Id.* at 252.

During Plaintiff's hospital stay, a second leg ultrasound was conducted. AR at 477. While it again showed no deep venous thrombosis between Plaintiff's groin and knees, the veins in Plaintiff's calves could not be seen well enough to be evaluated. *Id.* Diffuse edema was noted in the soft tissue of Plaintiff's calves. *Id.*

Plaintiff was discharged from the hospital two days after his admission. AR at 383. In early June 2021, Plaintiff followed up with his doctor, stating: "My skin on my legs is nasty and weeping though better than before. . . . I think also being off my feet 10 hours a day is making a differ[e]nce." *Id.* at 339. Later that month, he showed his doctor pictures of his edema, stating that "the right leg looks bad but it feels a lot better." *Id.* at 336. Plaintiff noted that he was able to walk better and had lost weight. *Id.* In August 2021, Plaintiff's legs still resembled the June pictures, and he "report[ed] open areas which drain clear sticky liquid." *Id.* at 334. He also

1  "report[ed] he feels like his [legs] are so heavy like pendulums when he walks." *Id.* On his right
2  leg, the doctor noted "dried skin with some areas of what appear to be seromas[4] vs impetigo[.]"
3  *Id.* At an appointment later that month, Plaintiff denied redness, warmth, or pain in his legs,
4  noting that he used Aquaphor "to keep areas moist so that the skin does not crack or cause pain."
5  *Id.* at 331. Plaintiff's leg girth was measured at "26-27 inches consistent with lymphedema[,]"
6  and he noted that the weight of his legs made it hard to exercise. *Id.* Plaintiff was diagnosed with
7  cellulitis and had skin cultures taken of the affected area. *Id.* at 76. Care providers also noted that
8  Plaintiff suffered from "venous stasis dermatitis[.]"[5] *Id.* at 331.
9  Plaintiff applied for Social Security benefits in September of 2021, reporting that he
10 "cannot wear regular pants without cutting off circulation nor can [I] wear any shoes other than
11 exstra exstra [sic] wide slippers 3-4 sizes bigger than my old regular shoes[.]" AR at 235. He
12 claimed that he "cannot stand for long nor can [I] walk far [I] have to massage my legs throughout
13 the day[.]" *Id.* Shortly afterward, Plaintiff contacted his doctor stating that his legs had gotten
14 worse, were "leaking smelly serum and they are sore at some points from the skin rubbing[.]" *Id.*
15 at 527. Around the same time, he told the Social Security Administration that his "legs develop
16 lesions and are painful and sensitive to the touch." *Id.* at 239. He noted that he could not squat
17 without pain, could not kneel because his "calfs [sic] rub the ground and bleed[,]" and needed to
18 have his bedsheets changed "almost daily because the lesions and broken skin on my legs
19 secretes/leaks fluid." *Id.* at 246.
20 At a physical therapy appointment in October 2021, Plaintiff was noted to have "right [leg]

---

[4] "Seroma is the abnormal accumulation of serous fluid in a dead space containing plasma and lymphatic fluid." Muattaz E. Kazzam & Paul Ng, *Postoperative Seroma Management* (Aug. 14, 2023), NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION, https://www.ncbi.nlm.nih.gov/books/NBK585101/.

[5] "Venous stasis dermatitis is a condition in which your skin—usually on your lower legs—becomes swollen or inflamed. . . . If you have venous stasis, your veins can't send the blood from your legs back to your heart. Blood pools in the lower legs and creates swelling, pressure and skin problems." *Venous Statis Dermatitis*, CLEVELAND CLINIC (Oct. 28, 2022), https://my.clevelandclinic.org/health/diseases/24388-venous-stasis-dermatitis. It is a long-term condition which cannot be cured. *Id.*

3

hyperkeratosis,[6] slight fungal smell" and to display the Stemmer sign[7] on his right leg. AR at 516. The physical therapist determined that Plaintiff was suffering from "bilateral lower leg and feet lymphedema, Stage 3." *Id.* at 526. At another physical therapy appointment in December of that year, Plaintiff continued to complain of leg and foot swelling, particularly on his right side. *Id.* at 515. The therapist noted that the pain was aggravated by "Heat, end of day, sitting/standing/walking longer" but that the pain would ease overnight. *Id.*

In January of 2022, Plaintiff was evaluated by consulting examiner Dr. Tang. AR at 502. Dr. Tang noted "[m]arked thickened chronic bilateral lower legs 'tree trunk' which appear as hard edema, thick dry skin . . . all indicating chronic vascular disease[.]" *Id.* at 503. Despite this, Dr. Tang noted that Plaintiff was able to walk normally without an assistive device and that he had full strength in his extremities. *Id.* at 504–05.

In July of 2022, Plaintiff told his physical therapist that he had tried going back to work, but was not able to stand long enough to perform his duties. AR at 589. A few days later, Plaintiff reported that his calves were about 75 centimeters in diameter and his feet were about 34 centimeters in diameter. *Id.* at 594. The physical therapist noted that this reflected more swelling since the previous appointment. *Id.*

In October of 2022, Plaintiff underwent vascular imaging on his legs. AR at 672. The imaging showed venous reflux in the saphenofemoral junction of Plaintiff's right leg. *Id.* at 673.

The ALJ held a hearing on November 10, 2022. AR at 35. At the hearing, Plaintiff testified that he experienced pain if he sat for too long. *Id.* at 41. For example, when driving, he stated that he "can be in the car for about 45 minutes, an hour before it's noticeably uncomfortable" and he needs to "stop and get out and move around[.]" *Id.* at 44. At a dining

---

[6] "Hyperkeratosis is a condition that causes your skin to thicken in certain places." *Hyperkeratosis*, CLEVELAND CLINIC (Nov. 17, 2023), https://my.clevelandclinic.org/health/diseases/hyperkeratosis. It can be caused by inflamed or infected skin. *Id.*

[7] The Stemmer sign is when the skin between the second and third toe is thickened. Wolfgang J. Brauer, Letter, *Stemmer Sign Needs to be Recorded and Interpreted Correctly*, 118 Deutsch Arzteblatt 39 (2021). It is considered proof of lymphedema and can be used to differentiate the severity of different lymphedema cases. *Id.*

4

room table or desk chair, Plaintiff stated that he could only sit for 15 to 20 minutes. *Id.* at 55. Similarly, he testified that he could only stand for "20 minutes at the most and then I have to . . . stop." *Id.* He also testified that the diuretic medication he took for his edema caused "constant urination. I constantly have to use the bathroom." *Id.* at 46; *see id.* at 59 (testifying that he must use the bathroom 2 to 3 times per hour). Plaintiff stated that he experienced pain in his feet and calves so bad that he could no longer walk barefoot. *Id.* at 52, 54. The pain was worse when Plaintiff wore constricting clothes, was exposed to moisture or extreme temperatures, or did not regularly elevate his legs. *Id.* at 53. Plaintiff stated that he elevated his legs 10 to 12 times per day for half an hour at a time. *Id.* at 54. He also stated that he used a cane to help with his balance and that balance concerns kept him from lifting more than eight pounds. *Id.* at 55, 56.

      A vocational expert testified at the hearing that a person would be able to elevate their legs two times per day, for fifteen minutes each time, within the normal work break schedule. AR at 64. The expert testified that it would not be possible for a person to take four such breaks or to take two half-hour breaks. *Id.* at 64, 66. She also testified that the use of a cane for balance, as opposed to just for walking, would preclude all competitive work. *Id.* at 66.

      The ALJ ultimately determined that Plaintiff was not disabled. AR at 29. As relevant here, at step 3 of his analysis, the ALJ stated that he "considered all listings applicable to [Plaintiff's] impairments, including Listings 2.03 and 8.02." *Id.* at 23. The listings that the ALJ actually discussed, however, were 3.02 and 8.09.[8] The ALJ found that Plaintiff had not presented any test results indicating that he equaled Listing 3.02, which concerns COPD. *Id.* As for Listing 8.09, which "requires extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed[,]" the ALJ found without further elaboration "that [Plaintiff's] cellulitis does not rise to this level of severity." *Id.* In support of this conclusion, the ALJ cited (again without elaboration) Exhibits 1F and 6F, which together comprise 257 pages of medical records. *Id.*

---

[8] The ALJ stated that he was analyzing Listing 8.05. However, "Listing 8.05 no longer exists and has been incorporated into Listing 8.09[.]" *Kip D. v. O'Malley*, 2024 WL 2303858, at *4 (E.D. Wa. May 20, 2024).

After finding that Plaintiff did not meet or equal a listing, the ALJ found that Plaintiff could perform light work with certain environmental limitations, provided that he was given a ten-minute break away from his workstation after every two hours of standing and was allowed to elevate his legs twice a day for fifteen minutes. AR at 23–24. The ALJ determined that Plaintiff could perform several jobs in the national economy and was therefore not disabled. *Id.* at 28.

Plaintiff requested review of the ALJ's decision by the Appeals Council. AR at 317. Among other things, Plaintiff argued that the ALJ should have determined whether his symptoms equaled listing 4.11A. *Id.* This listing concerns "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and . . . [e]xtensive brawny edema[9] . . . involving at least two-thirds of the leg between the ankle and knee[.]" 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.11. Of note, the listings state that "[l]ymphedema does not meet the requirements of 4.11, although it may medically equal the severity of that listing." *Id.* at § 4.00G4. Plaintiff argued that the consulting examiner had observed "[m]arked thickened bilateral lower legs "tree trunk" which appear as hard edema, thick dry skin . . . all indicating chronic vascular disease[.]" AR at 320. However, the Appeals Council ultimately denied Plaintiff's request for review, determining that Plaintiff's objections did "not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 1.

Plaintiff appeals.

## II.     Standard

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs

---

[9] "Brawny edema (4.11A) is swelling that is usually dense and feels firm due to the presence of increased connective tissue; it is also associated with characteristic skin pigmentation changes." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

6

courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### III.   Analysis

The court finds that the Commissioner erred at Step 3 by not considering whether Plaintiff's lymphedema symptoms equaled Listing 4.11A.

"If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). In this case, Plaintiff argues that his lymphedema equals Listing 4.11A, which requires "[c]hronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and . . . [e]xtensive brawny edema. . . involving at least two-thirds of the leg between the ankle and knee[.]" 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 4.11. The record reflects that Plaintiff's lymphedema symptoms are a close fit for 4.11A.

Regarding the first requirement of chronic venous insufficiency with deep venous incompetence, a CT scan of Plaintiff's right leg revealed venous reflux in the saphenofemoral junction. The saphenofemoral junction is where the (superficial) great saphenous vein meets the (deep) femoral vein. Dong-Kyu Lee et al., *Ultrasonography of the Lower Extremity Veins:*

7

*Anatomy and Basic Approach*, 36 ULTRASONOGRAPHY 120, 126 (2017).  And venous reflux, a key symptom of chronic venous insufficiency, refers to the backward flow of blood in the veins due to one or more non-functional valves.  *Chronic Venous Insufficiency*, CLEVELAND CLINIC (Jul. 17, 2022), https://my.clevelandclinic.org/health/diseases/16872-chronic-venous-insufficiency-cvi.  Therefore, Plaintiff appears to suffer symptoms of venous insufficiency and incompetence affecting at least one deep vein.

The second requirement, extensive brawny edema of two-thirds of the leg between the ankle and the knee, is reflected throughout the record.  The edema itself is often described as "hard" or the affected skin as "thickened," in accordance with the Social Security Administration's description of brawny edema as "firm" or "dense."  Plaintiff's edema is also frequently referred to by the medical categorization of "Stage III," which indicates "[s]carring and thickening of the skin" and "[p]ermanent swelling of the affected area" such that no dents are left if pressure is applied.  *Lymphedema: What are Your Surgical Options?*, JOHNS HOPKINS MEDICINE, https://www.hopkinsmedicine.org/health/treatment-tests-and-therapies/lymphedema-what-are-your-surgical-options.  In other words, Plaintiff's bilateral calf and foot edema as reflected in the record certainly appears to be brawny.

*Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988 (D. Id. August 27, 2018), is instructive here.  In that case, the plaintiff complained of migraines, among other things.  *Id.* at *1.  The ALJ considered several listings relating to Plaintiff's other impairments, determining that none were met.  *Id.*  However, the ALJ did not consider whether the plaintiff's migraines equaled Listing 11.02, which concerns epilepsy.  *Id.* at *2–*3.  Notably, the Social Security Administration had issued guidance documents illustrating the concept of a condition that "equals a listing" using the example of migraines and Listing 11.02.  *Id.* at *3.  The *Rader* court found that "[t]he failure to recognize the applicability of 11.02, especially considering specific guidance provided by the SSA[], is harmful error when reviewed alongside the available record evidence of Petitioner's migraine headaches."  *Id.* at *5.

Here, as in *Rader*, the Social Security Administration has provided guidance that the plaintiff's impairment may be analyzed under another listing.  In fact, in the present case,

8

1  lymphedema is mentioned *within the listing descriptions* as a disease which might equal Listing
2  4.11. It was therefore error for the ALJ to fail to analyze Plaintiff's lymphedema under Listing
3  4.11A. Further, in light of the record evidence indicating that Plaintiff's lymphedema may well
4  equal the listing, this court cannot say that the error was harmless.

5        The Social Security Administration resists this conclusion. It relies on *Lewis* for the
6  proposition that a claimant "must present some theory as to how his impairments combine to equal
7  the severity of the elements of a given Listing." (Dkt. 11, p. 9). It then claims that Plaintiff "does
8  not point to any evidence from his providers or prior administrative medical findings that even
9  suggest that his leg swelling rose to that level of severity[,]" but rather relies on "his own belief
10 that he equaled a listing based on his own interpretation of his leg swelling[.]" *Id.* at 10. The
11 court finds the Administration's argument unpersuasive. First, Plaintiff is not arguing that his
12 impairments *combine* to equal a listing, but rather that *one specific impairment* (lymphedema)
13 equals Listing 4.11A, as the listings themselves note that it might. At least one other district court
14 in the Ninth Circuit has found that distinction meaningful. *Phillip S. C. v. Comm'r Soc. Sec.*
15 *Admin.*, 2023 WL 2911871, at *5 (D. Or. Apr. 12, 2023) (claimant did not need to preserve
16 specific argument regarding equivalency of headache disorder and Listing 11.02). Second,
17 Plaintiff *did* cite specific medical evidence before the Appeals Council in requesting that his
18 lymphedema be evaluated under 4.11A: Dr. Tang's report. AR at 319–20. As Plaintiff argued
19 below, Dr. Tang found "[m]arked thickened chronic bilateral lower legs 'tree trunk' which appear
20 as hard edema, thick dry skin . . . all indicating chronic vascular disease[.]" In other words, Dr.
21 Tang observed both hard (brawny) edema on Plaintiff's lower legs and indications of chronic vein
22 problems. This is not merely Plaintiff's interpretation of his symptoms, but a medical opinion
23 indicating that Plaintiff's lymphedema may equal the claimed listing, which involves brawny
24 edema and a vein disorder. Accordingly, this court finds that Plaintiff adequately presented his
25 4.11A argument below.

26       Because Plaintiff properly preserved his 4.11A argument for this court's review, and
27 because the court agrees with Plaintiff that it was error not to analyze Plaintiff's lymphedema
28 under that listing, the case must be remanded.

### IV. Instructions for Remand

Plaintiff requests that his case be remanded for an award of benefits instead of for further proceedings. (Dkt. 10, p. 20). After careful review of the record, however, the court has determined that further proceedings are appropriate in this matter.

"Usually, if additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (internal quotations and alteration omitted). However, a case may be remanded for an award of benefits where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020.

As regards the Listing 4.11A issue, however, the record is not fully developed. Equivalence in this case should be determined by someone with medical expertise, not a district court drawing conjectures about the applicability of several specialized medical terms. Further, at the time of the ALJ hearing, Plaintiff was in the process of having another scan of his legs completed. AR at 57. The results of that scan could provide important information about Plaintiff's condition which could help determine medical equivalency. Accordingly, the court will remand on an open record so that, with the benefit of any new medical evidence and the testimony of such experts as the parties wish to consult, an equivalency determination can be made.

Plaintiff also notes that his testimony was improperly disregarded at Step 5. This is true. While the ALJ found that Plaintiff's medically determinable conditions could be reasonably expected to produce the symptoms Plaintiff alleged, the ALJ discounted Plaintiff's testimony because "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of the record for the reasons explained in this decision." AR at 25–26. However, where a claimant has provided evidence of an underlying impairment that could produce the alleged symptoms and

10

there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (internal quotations omitted). Here, the ALJ gave no reason whatsoever for discounting Plaintiff's testimony. This was error.

Plaintiff urges the court to remand for an award of benefits based on the three *Garrison* factors. He argues that, taking his testimony as true, he requires a cane for balance, which would preclude all competitive work. However, "[t]he touchstone for an award of benefits is the existence of a disability, not the agency's legal error." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Remand is not appropriate "if the record raises crucial questions as to the extent of a claimant's impairment given inconsistencies between his testimony and the medical evidence in the record, because these are exactly the sort of issues that should be remanded to the agency for further proceedings." *Id.* Here, while Plaintiff claims he requires a cane for balance, Dr. Tang concluded that Plaintiff is able to walk normally without one. Remand for further proceedings is appropriate to resolve this discrepancy.

Plaintiff also claims that he must elevate his legs much more than the ALJ's RFC determination allows for. While this presents a closer question, the court finds that there are mixed indications in the record as to how much Plaintiff *needs* to elevate his legs. *See* AR at 516 (Plaintiff directed by physical therapist to elevate legs "1-2x times/day 15-20 minutes"), 526 (same), 44 (Plaintiff able to alleviate discomfort when driving by "get[ting] out and mov[ing] around" every 45 minutes). Remand for further proceedings is appropriate to clarify this discrepancy. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for award of benefits inappropriate unless record "is free from conflicts and ambiguities").

On remand, the ALJ is directed to use the proper "specific, clear and convincing reasons" standard when evaluating Plaintiff's testimony. The ALJ should also permit Plaintiff to supplement the record with clarifying statements from his treatment providers on the issue of leg elevation.

Finally, the court notes that the ALJ also failed to properly explain his analysis of Listing 8.09. The ALJ simply stated that "the claimant's cellulitis does not rise to this level of severity."

11

AR at 23.  This is an insufficient explanation.  An ALJ must provide "'an adequate statement' of the 'foundations on which the ultimate factual conclusions are based'" when concluding that a claimant's condition does not meet or equal a listing.  *Delacruz v. Berryhill*, 2019 WL 2644235, at *7 (N.D. Cal. June 27, 2019) (quoting *Gonzalez v. Sullivan*, 914 F.3d 1197, 1201 (9th Cir. 1990)).  A conclusory statement that an impairment is insufficiently severe, followed by a citation encompassing over 250 pages of the record, is not an adequate statement of the foundation for the ALJ's determination.  Accordingly, in the event that Plaintiff is not found disabled under Listing 4.11A, the ALJ should reevaluate Plaintiff's conditions under Listing 8.09.  The ALJ should also consider whether Plaintiff's lymphedema, as opposed to only Plaintiff's cellulitis, causes lesions which rise to the required level of severity.

**IT IS SO ORDERED.**

Dated: February 19, 2025

ROBERT M. ILLMAN
United States Magistrate Judge